IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

REX DALE MADDOX                                                                      PLAINTIFF

v.                                      CIVIL NO. 15-5209

NANCY A. BERRYHILL,[1] Commissioner
Social Security Administration                                                       DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Rex Dale Maddox, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on August 20, 2012, alleging an inability to work since May 15, 2012, due to dizziness, hypertension, bilateral numbness in the legs and feet, sciatica, back pain, anxiety, depression, and chest pain. (Doc. 13, pp. 87-88, 207, 214). For DIB purposes, Plaintiff maintained insured status through

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

December 31, 2013. (Doc. 13, pp. 16, 220). An administrative hearing was held on October 2, 2013, at which Plaintiff appeared with counsel and testified. (Doc. 13, pp. 32-84).

By written decision dated March 28, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Doc. 13, p. 18). Specifically, the ALJ found Plaintiff had the following severe impairments: morbid obesity; essential hypertension; a history of right radical orchiectomy; a major depressive disorder/depression, not otherwise specified (NOS); a generalized anxiety disorder; Asperger's Disorder; and a history of alcohol abuse. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 13, p. 19). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to perform work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little use of judgment, and the supervision required is simple, direct and concrete.

(Doc. 13, p. 21). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a poultry production worker, a production assembly line worker, and an advertising material distributor. (Doc. 13, p. 26).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on June 29, 2015. (Doc. 13, pp. 5-8). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 16, 17).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Evidence Presented:**

At the time of the administrative hearing held on October 2, 2013, Plaintiff was forty-nine years of age and had obtained a high school education. (Doc. 13, pp. 36-37). Plaintiff's past relevant work consists of work as a material handler, a children's institute attendant, a fry cook, and a dishwasher.

A review of the pertinent medical evidence reflects the following. On August 28, 2012, Plaintiff complained of hypertension. (Doc. 13, pp. 359-360). Plaintiff also reported numbness in his legs and arms and indicated he had a motor vehicle accident because he could not feel the pedals. Plaintiff reported he used two cans of chewing tobacco a week and occasionally smoked cigarettes. Plaintiff was diagnosed with hypertension and peripheral vascular disease.

On August 29, 2012, Plaintiff was seen at Ozark Guidance with complaints of a depressed mood and relational issues for the past six plus months. (Doc. 13, pp. 382-388). Plaintiff reported that he locked up when things did not go his way, and that he was having problems with his family. Plaintiff reported that he recently moved from his sister's house to his brother's house. Plaintiff listed hypertension as his medical concern. Plaintiff reported he had not consumed alcohol in two to three months. Plaintiff was diagnosed with depression and a relational problem, NOS.

On August 30, 2012, Plaintiff was seen by Sean Millhouse, LAC, at Ozark Guidance. (Doc. 13, pp. 389-393). Plaintiff reported struggling with depression and relational issues for the last six months. Plaintiff reported that he was withdrawn and had difficulty retaining work.

3

Plaintiff indicated that he was fired in May of 2012, after getting into an argument with a manager. A treatment plan and goals were discussed with Plaintiff.

On October 29, 2012, Plaintiff underwent a consultative mental diagnostic evaluation performed by Dr. Terry. L. Efird. (Doc. 13, pp. 375-379). Plaintiff reported that he was applying for disability because his legs and back were bothering him. Plaintiff reported experiencing physical pain "on and off." When asked about mental symptoms, Plaintiff reported that he had a tendency to keep to himself and had difficulty interacting with others. Plaintiff reported having problems concentrating and making decisions if he was under pressure. Plaintiff also reported experiencing excessive worry daily. Plaintiff reported that he had gone to counseling about four years ago, and that he was not taking any psychiatric medication. Dr. Efird noted that Plaintiff endorsed the ability to perform basic self-care tasks independently. Plaintiff also reported that ability to perform household chores adequately. Plaintiff reported a fair to poor relationship with co-workers and supervisors and indicated he had been terminated from employment about three times. Plaintiff reported drinking alcohol on a daily basis when he had the resources. Dr. Efird diagnosed Plaintiff with a major depressive disorder, moderate; a generalized anxiety disorder; and alcohol abuse. Dr. Efird opined that Plaintiff's GAF score was "50-60."

With respect to Plaintiff's adaptive functioning, Plaintiff endorsed the ability to drive unfamiliar routes for the most part. Plaintiff also endorsed the ability to shop independently; to perform most activities of daily living adequately; and to handle his personal finances. Plaintiff reported that he lived a fairly isolated lifestyle since moving to Arkansas in 2006. Dr. Efird noted that Plaintiff probably had some degree of difficulty in social settings, but Plaintiff

maintained the capacity to perform the basic cognitive tasks required for basic work-like activities.

On November 2, 2012, Plaintiff underwent an US Ankle Brachial Pressure Index that revealed normal ankle/arm indices. (Doc. 13, p. 380). Plaintiff also had a normal US Doppler Scan of the lower extremities. (Doc. 13, p. 381).

On November 30, 2012, Plaintiff was seen by Jeanine Bengtson, LMSW, at Ozark Guidance for a standard ninety day review. (Doc. 13, pp. 394-401).

On December 12, 2012, Plaintiff was seen for medication refills. (Doc. 13, pp. 403-404). Upon examination, Plaintiff was noted to have a normal gait with no lower extremity edema.

On January 24, 2013, Plaintiff was seen for an individual therapy session at Ozark Guidance. (Doc. 13, pp. 439-441). Plaintiff was noted as making some progress.

On January 30, 2013, Plaintiff was seen for a medication refill. (Doc. 13, pp. 410-411). Plaintiff was noted to have a normal cervical range of motion and a normal gait.

On January 31, 2013, Plaintiff attended a group therapy session at Ozark Guidance. (Doc. 13, pp. 437-438). Plaintiff was noted as being engaged in the exercises.

On February 22, 2013, Plaintiff underwent a renal sonogram. (Doc. 13, p. 416). Plaintiff was noted to have renal cortical thinning without evidence of hydronephrosis, but no evidence of renal parenchymal disease. The sonogram also revealed a small caliber urinary bladder and incidental note of hepatic steatosis.

On March 7, 2013, Plaintiff was seen for an individual therapy session at Ozark Guidance. (Doc. 13, pp. 442-443). Plaintiff reported he had been ill with respiratory issues. Plaintiff indicated that he was looking forward to cleaning and organizing his room so that he could do some painting. Plaintiff was noted as making some progress.

On April 18, 2013, Plaintiff was seen by Dr. Ester Salvador at Ozark Guidance. (Doc. 13, pp. 421-426). Dr. Salvador noted that Plaintiff was referred due to his depression and anxiety. Plaintiff reported that after he lost his job he lost his self-esteem and began isolating himself. Plaintiff reported that due to his anxiety he was unable to even look in the classifieds for a job. Plaintiff reported that he was able to be with his relatives and did chores around the house when everyone was gone. Plaintiff reported that he could go to the store but if he encountered people he did not like he left the store. Plaintiff reported that his family urged him to seek help. Plaintiff also indicated that he had experienced numbness in his hands and feet for the past year but denied arthritis. Plaintiff was diagnosed with a depressive disorder, nos; and r/o an alcohol induced mood disorder. Dr. Salvador prescribed medication and recommended that Plaintiff continue with individual therapy and transition into group therapy.

On May 16, 2013, Plaintiff was seen for an individual therapy session at Ozark Guidance. (Doc. 13, pp. 444-446). Plaintiff reported that he was able to see a psychiatrist and that the appointment went well and he was prescribed medication. After doing the homework assigned to him, Plaintiff reported that he was feeling hopeful that he could do better. Plaintiff was noted as making some progress.

On May 22, 2013, Plaintiff was seen by Dr. Salvador. (Doc. 13, pp. 427-431). Plaintiff reported that he drank three beers the day before the appointment. Plaintiff reported that he

6

could go without alcohol if he did not have the money to buy it. Plaintiff reported withdrawal symptoms from nicotine (chewing tobacco) cessation. Plaintiff reported he was only using 1/3 of a can a day. Plaintiff indicated that his energy was slightly better. Plaintiff reported that he helped a nephew move to Arkansas from Oklahoma. Plaintiff continued to experience occasional numbness of the hands and feet.

On May 23, 2013, Plaintiff was seen for an individual therapy session at Ozark Guidance. (Doc. 13, pp. 447-449). Plaintiff was noted as having difficulty following social cues.

On May 30, 2013, Plaintiff was seen for an individual therapy session at Ozark Guidance. (Doc. 13, pp. 450-452). Plaintiff was noted as displaying openness and receptivity to feedback and self-reflection.

On June 6, 2013, Plaintiff was seen for an individual therapy session at Ozark Guidance. (Doc. 13, pp. 453-455). Plaintiff was noted as making some progress.

On June 13, 2013, Plaintiff was seen for an individual therapy session at Ozark Guidance. (Doc. 13, pp. 456-458). Plaintiff was noted as making some progress.

On June 19, 2013, Plaintiff was see for a medication refill. (Doc. 13, pp. 408-409). Plaintiff denied chest pain or shortness of breath. Plaintiff reported that he planned to start a veggie garden. Upon examination, Plaintiff was noted to have trace bilateral non-pitting edema. Plaintiff was also noted to have a normal gait.

On July 5, 2013, Plaintiff was seen for an individual therapy session at Ozark Guidance. (Doc. 13, pp. 459-461). Plaintiff invited family members to the session to discuss his diagnosis of Asperger's. Plaintiff was noted as making some progress.

On July 17, 2013, Plaintiff was seen by Dr. Barry Cole at Ozark Guidance for a medication check. (Doc. 13, pp. 432-436). Plaintiff reported that he was told he had Asperger's Syndrome. Plaintiff reported that his concentration was not good and his memory was sluggish. Plaintiff reported that he liked to watch movies and cook meals. Plaintiff reported that he lived with his brother and that they got along "fairly well."

On July 19, 2013, Plaintiff was seen for an individual therapy session at Ozark Guidance. (Doc. 13, pp. 462-464). Plaintiff was noted as making some progress.

On August 1, 2013, Plaintiff was seen for an individual therapy session at Ozark Guidance. (Doc. 13, pp. 465-467). Plaintiff reported that he had been watching a lot of movies and researched a picture of Tibet. Plaintiff was noted as making some progress.

On August 23, 2013, Plaintiff was seen for an individual therapy session at Ozark Guidance. (Doc. 13, pp. 468-470). Plaintiff was noted as making some progress.

On September 6, 2013, Plaintiff was seen for an individual therapy session at Ozark Guidance. (Doc. 13, pp. 471-473). Plaintiff was noted as making some progress.

### III. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable

mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c (a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from

9

doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**IV.   Discussion:**

Plaintiff argues the following issues on appeal: 1) the ALJ erred by failing to fully and fairly develop the record; 2) the ALJ erred in determining Plaintiff's RFC; and 3) the ALJ erred in failing to properly consider the Global Assessment of Functioning (GAF).

**A.   Insured Status and Relevant Time Periods:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2013. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of May 15, 2012, his alleged onset date of disability, through December 31, 2013, the last date he was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB he must prove that on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart,

471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements).

With respect to Plaintiff's SSI application, benefits are not payable prior to the date of application, regardless of how far back disability may, in fact, be alleged or found to extend. See 20 C.F.R. § 416.335. Therefore, the relevant period is from August 20, 2012, the date Plaintiff protectively applied for SSI benefits, through March 28, 2014, the date of the ALJ's decision.

### B.     Full and Fair Development of the Record:

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir.1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011). After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### C.     Listing of Impairments:

Plaintiff argues that the ALJ erred by failing to determine that Plaintiff's impairments met a Listing of Impairments pursuant to 20 CFR Part 404, Subpart P, Appendix 1.

11

The burden of proof is on the Plaintiff to establish that his impairments meet or equal a listing. See Sullivan v. Zebley, 493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). To meet a listing, an impairment must meet all of the listing's specified criteria. Id. at 530, 110 S.Ct. 885 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify."); Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "Medical equivalence must be based on medical findings." 20 C.F.R. § 416.926(b) (2003); Sullivan, 493 U.S. at 531 ("a claimant ... must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment").  In this case, the ALJ explicitly found that the medical evidence does not show medical findings that are the same or equivalent to a listed impairment.

After reviewing the entire evidence of record, the Court finds there is sufficient evidence to support the ALJ's determination that Plaintiff's impairments did not medically equal a Listing.

### D.     Subjective Complaints and Symptom Evaluation:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.  As the Eighth Circuit has observed, "Our touchstone is

that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the record reveals that during the relevant time period, Plaintiff was able to take care of his personal needs; to do light household chores; to prepare simple meals; to drive; and to spend time watching television, drawing and painting. In October of 2012, Plaintiff reported to Dr. Efird that while he lived a fairly isolated life-style he was able to shop independently, perform most activities of daily living adequately, and to handle his personal finances. In June of 2013, Plaintiff reported that he was planning on starting a veggie garden from seed to help with losing weight by eating better.

With respect to Plaintiff's alleged physical impairments, the record revealed that Plaintiff was treated conservatively and appeared to experience some relief with the use of medication. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998); See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). As for Plaintiff's mental impairments, the medical evidence reveals that Plaintiff showed improvement with the use of medication and therapy. Plaintiff was consistently noted as making progress during his therapy sessions.

The Court would also note that while Plaintiff alleged an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). The record

13

further reveals that Plaintiff was able to come up with the funds to support his chewing tobacco habit during the relevant time period.

With regard to the testimony from niece, the ALJ properly considered this evidence but found it unpersuasive. This determination was within the ALJ's province. See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995); Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### E.     ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

14

In determining that Plaintiff maintained the RFC to perform light work with limitations, the ALJ considered the medical assessments of the non-examining agency medical consultants; Plaintiff's subjective complaints; and his medical records. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions the non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). The ALJ also took Plaintiff's obesity into account when determining that Plaintiff could perform light work with limitations. Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal).

While Plaintiff argues that the ALJ erred in the analysis of Plaintiff's GAF scores, a GAF score is not essential to the RFC's accuracy. Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002). "[A]n ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." Jones v. Astrue, 619 F.3d 963, 974 (8th Cir. 2010). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination for the time period in question.

### F.     Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record

as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a poultry production worker, a production assembly line worker, and an advertising material distributor. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.     Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of April, 2017.

                              /s/  *Erin L. Wiedemann*
                            HON. ERIN L. WIEDEMANN
                            UNITED STATES MAGISTRATE JUDGE