# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF ARKANSAS
# FAYETTEVILLE DIVISION

**REX DALE MADDOX**                                                                **PLAINTIFF**

v.                                          Case No. 5:15-CV-05209

**NANCY A. BERRYHILL,**[1]
**Commissioner of Social Security**                                            **DEFENDANT**

## OPINION AND ORDER

Currently before the Court is the Report and Recommendation ("R&R") (Doc. 18) of the Honorable Erin L. Wiedemann, United States Magistrate Judge for the Western District of Arkansas, filed in this case on April 18, 2017, regarding Plaintiff Rex Dale Maddox's request for judicial review of the decision to deny his claim for supplemental security income benefits ("SSI") under the provisions of Titles II and XVI of the Social Security Act.

The Magistrate Judge recommends affirming the Administrative Law Judge's ("ALJ") determination that Maddox is not entitled to SSI benefits. On April 28, 2017, Maddox's attorney filed a Motion for Extension of Time to file Objections to the R&R. *See* Doc. 19. The Motion was granted the same day, and the deadline to file objections was extended to May 29, 2017. *See* Text-Only Order of April 28, 2017. Maddox did not file his Objections until May 30, 2017, which was one day past the deadline. *See* Doc. 20. Even though the Objections were untimely filed, the Court nonetheless considers them.

In Maddox's Objections, he argues that the Magistrate Judge erred in finding that

---

[1] Nancy A. Berryhill has been appointed to serve as acting Commissioner of Social Security, and is hereby substituted as Defendant pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

substantial evidence existed to deny the claim for benefits. Specifically, Maddox contends that the Magistrate Judge erred in: (1) failing to consider that Maddox has only held jobs that his family obtained for him, and that he never interacted with the public in any of these jobs; (2) failing to review and credit the testimony of his niece, Shannon Goff, who testified about Maddox's lack of socialization, inability to work and follow instructions, tendency to exaggerate, and current and former living situation; (3) finding that the medical records showed that Maddox "made progress" during his counseling sessions; (4) finding that Maddox could perform more daily tasks than he was actually capable of doing, due to the fact that he exaggerated his abilities when discussing them with his doctors and the ALJ; (5) failing to consider Maddox's numbness in his legs and feet and his edema when evaluating his residual functional capacity, or "RFC"; and (6) mentioning in the R&R Maddox's use of "free clinics."

In light of Maddox's Objections, the Court has undertaken a *de novo* review of the record, and, after doing so, finds that the Objections offer neither law nor fact justifying deviation from the Magistrate Judge's recommendation. Accordingly, the R&R will be **ADOPTED IN ITS ENTIRETY**.

## I. LEGAL STANDARD

In reviewing the decision of the ALJ, the Court must determine whether substantial evidence in the administrative record supports the decision, pursuant to 42 U.S.C. § 405(g). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). Such evidence is "less than a preponderance but enough so that a

reasonable mind could find it adequate to support the decision." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that could have supported a contrary outcome, or because the Court could have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, "[i]f after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)).

## II. MADDOX'S OBJECTIONS

Maddox's first objection is that the ALJ failed to consider the fact that Maddox only held jobs that his family obtained for him, and that he never interacted with the public in any of these jobs. The Court finds that the ALJ did consider Maddox's work history and mental health history, including his history of depression, problems relating to others, and his tendency to argue with others at work, but still found that he was able to perform light, unskilled work. *See* Doc. 13, pp. 22-23.

In particular, with respect to Maddox's mental health history and ability to relate to others, the ALJ found the opinions of Drs. Efird, Henderson, and Brown more persuasive than those of Dr. Salvatore. According to Dr. Elfird, Maddox exhibited "some degree of difficulty in social settings," but nevertheless "communicated and interacted in a reasonably socially adequate manner and in a reasonably intelligible and effective manner." *Id.* at 23-

24. Similarly, Drs. Henderson and Brown acknowledged Maddox's affective and anxiety disorders, but opined that he was "not significantly limited in the ability to carry out very short and simple instructions, make simple work-related decisions, ask simple questions or request assistance, be aware of normal hazards and take appropriate precautions." *Id.* at 24. The ALJ chose not to credit the opinion of Dr. Salvatore, who evaluated Maddox and assigned him a low Global Assessment of Functioning ("GAF") score of 35. In considering Dr. Salvatore's opinion, the ALJ observed that a low GAF score of 35 "is assigned to people who have serious impairment in communication and judgment or inability to function in several areas," and Maddox's own testimony and the other medical, work, and anecdotal history in the record did not support such a low GAF score. *See id.* The Magistrate Judge also correctly noted in her R&R that an ALJ may afford greater weight to medical evidence and testimony rather than GAF scores, when appropriate. *See* Doc. 18, p. 15. For these reasons, the Court agrees with the Magistrate Judge that the ALJ's opinion about Maddox's ability to perform light, unskilled work was supported by the evidence. The first objection is therefore overruled.

Maddox's second objection is that the ALJ failed to credit the testimony of Maddox's niece, Shannon Goff, who testified about Maddox's lack of socialization, inability to work and follow instructions, tendency to exaggerate, and current and former living situation. To the contrary, the ALJ's opinion explicitly discussed Ms. Goff's testimony and found it credible, but unhelpful to the ultimate question of whether Maddox was able to work. *See* Doc. 13, p. 25 (ALJ's observation that Ms. Goff "was not able to provide relevant testimony in regard to the claimant's ability to work . . . ."). The Court also reviewed the transcript of

4

Ms. Goff's testimony and finds that the relative weight the ALJ assigned to her testimony was reasonable. This is because Ms. Goff testified that she rarely saw or interacted with Maddox during the two-and-a-half years that he lived with her. *See* Doc. 13, p. 65 ("[T]here would be times where I would not see him for a week or two, even though we lived in the same house. He pretty much stayed in his room and he would come out, I believe, when he knew I was asleep and he would eat or come out of his room at that time."). She also testified that she had no idea that Maddox had sought and obtained a job at McDonald's during the period of time that he lived with her. *See id.* at 66-67. Considering these circumstances, it was reasonable for the ALJ to give little persuasive weight to her testimony, particularly with regard to Maddox's ability to work. The second objection is therefore overruled.

Maddox's third objection is that there was no proof in the administrative record to substantiate the Magistrate Judge's observation that Maddox "made progress" during his counseling sessions. This objection is overruled, as the counseling records from Ozark Guidance Center are replete with notations that Maddox was "making progress" in his treatment, for various reasons. *See, e.g., id.* at 440, 443, 445.

Maddox's fourth objection is that the Court should discount or disregard the statements he made to the doctors and the ALJ regarding his capability of performing a number of daily life activities. Maddox maintains that he has a tendency to exaggerate or lie about his capabilities in order to appear "normal," and that some of the information he reported to his doctors was untrue and should not have been relied upon by the ALJ. With regard to this objection, the Court initially observes that this is the first time this argument has been raised, at least to the Court's knowledge. Counsel for Maddox was offered the

5

opportunity to object to any medical documents introduced at the administrative hearing, and she did not. See Administrative Hearing Transcript, Doc. 13, pp. 34-35. Second, as to the accuracy of the medical reports that contain statements as to Maddox's capabilities and daily routine, the ALJ was permitted to rely on them in light of the lack of objection or argument by Maddox. The law generally allows an ALJ to take into account all relevant evidence in the record, including medical opinions, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). Third, the ALJ had the opportunity to observe Maddox and make credibility determinations about him during the hearing. "Assessing the credibility of the witnesses lies within the province of the Secretary." Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995). At no point during his testimony did Maddox seek to clarify any misstatements or exaggerations he might have made to his doctors regarding his daily activities. For all of these reasons, the fourth objection is overruled.

Maddox's fifth objection is that the ALJ failed to consider the numbness in his legs and feet and his edema when evaluating his residual functional capacity, or "RFC." The Court disagrees. The ALJ analyzed Maddox's medical complaints as follows:

> As for the opinion evidence, in addition to the objective medical evidence, the undersigned has considered statements from treating and examining physicians in assessing the claimant's residual functional capacity, as required by 20 CFR 404.1527 and 416.927 and SSR 96-2p. In this case, none of the claimant's treating physicians provided an opinion in regard to the claimant's ability to work. The undersigned has considered the opinions provided by state medical consultants David Hicks, M.D., and Janet Cathey, M.D. Drs. Hicks and Cathey reviewed the medical evidence as a whole and found notwithstanding the claimant's hypertension, obesity and edema, he retained the ability to perform a full range of medium exertional level work.

6

(Exhibits 3A and 7A).

(Doc. 13, p. 22).

The ALJ also paid particular attention to Maddox's diagnosis of morbid obesity, which the ALJ noted "often complicates chronic disease of the cardiovascular, respiratory, and musculoskeletal body systems." *Id.* Due to Maddox's obesity, the ALJ *lowered* the recommended RFC from "medium exertion" to "light exertion." The Court is satisfied that the ALJ properly considered Maddox's medical limitations in determining his RFC, and his fifth objection is therefore overruled.

Maddox's final objection is that the R&R noted his use of "free clinics," and that notation is somehow improper. *See* Doc. 20, p. 3. The Court reviewed the R&R and found not a single reference to "free clinics." Instead, the Magistrate Judge made one reference to Maddox's lack of finances, as follows: "The Court would also note that while Plaintiff alleged an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds." (Doc. 18, p. 13). It is unclear to the Court why Maddox lodged this objection as to the reference to "free clinics." Accordingly, the objection is overruled as vague and ambiguous.

### III. CONCLUSION

For the reasons explained herein, all of Maddox's Objections to the R&R are overruled. The R&R (Doc. 18) is therefore **ADOPTED IN ITS ENTIRETY**, and the findings of the ALJ are affirmed. Judgment will enter concurrently with this opinion.

7

```
```

IT IS SO ORDERED on this 17th day of July, 2017.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE